UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| PAUL DEMPSEY AND ALICE DEMPSEY<br>　　　　　　　Plaintiffs<br><br>vs.<br><br>ALLSTATE VEHICLE AND PROPERTY<br>INSURANCE COMPANY.<br>　　　　　　　Defendant | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. _____<br><br>Jury |

## Plaintiffs' Original Complaint and Demand for Trial by Jury

COMES NOW, Plaintiffs Paul Dempsey and Alice Dempsey, and for their Original Complaint against Defendant Allstate Vehicle and Property Insurance Company and, in support of their causes of action, would respectfully show the Court the following:

### I. Parties

1.1     Plaintiffs Paul Dempsey and Alice Dempsey ("Plaintiffs") are individuals who are residents of domiciled in Bowie County, Texas.

1.2     Defendant Allstate Vehicle and Property Insurance Company, ("Defendant" or "Allstate") is a foreign corporation, incorporated under the laws of the State of Illinois, and has its principal place of business in Cook County Illinois. It is registered to do business in Texas.  Defendant Allstate can be served with process upon its registered agent in the State of Texas, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas Texas 75201 – 3136.

### II. Jurisdiction and Venue

2.1     This Court has jurisdiction to hear Plaintiff's claim pursuant to 28 U.S.C.S. §1332 as this is a civil action in which the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

2.2    Venue is proper in this district pursuant to 28 U.S.C.S. §1391(b)(2) as it is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, as well as where the property that is the subject of the action is situated.

### III. Factual Background

3.1    Plaintiffs are husband and wife, whose home is located at the address of 5805 Winchester Drive, Texarkana, Texas 75503.  Plaintiffs insured their home under a policy of insurance issued by Defendant Allstate Vehicle and Property Insurance Company, policy number 429-056-068, with effective date from April 1, 2022 – April 1, 2023.  Defendant entitled the policy a "House & Home Policy".  Attached hereto as Exhibit A is a certified copy of Defendant's policy issued to Plaintiffs, insuring Plaintiffs' home located at 5805 Winchester Drive, Texarkana, Texas 75503. This policy includes the dec page, with coverage detail, for the Plaintiffs' home.

3.2    The policies coverages at issue in this suit, include but are not limited to, the following:

    A.    **"Dwelling Protection – Coverage A"**.

    B.    **Additional Living Expenses (ALE)**[1]

Plaintiffs assert that Defendant has breached and failed to honor the requirements of Defendant under the above coverage provisions, by failing to property perform and pay under such provisions.

3.3    On the date of December 24, 2022, a winter storm came through Texarkana, causing water pipes in Plaintiff's home's ceiling to burst, flooding their home, and causing tremendous water damage. The home was, and is to this date, unlivable.  Plaintiff Paul Dempsey immediately called Allstate, on the date of December 25, 2022, to notify Allstate of the claim.  Plaintiff Paul Dempsey called Service Masters, a local water restoration company, to come to his home to begin dealing with the water problems.

---

[1] See page 6 of Exhibit A

3.4     After the claim was filed by Plaintiffs with Allstate, Allstate's representatives informed Plaintiffs that so long as they had a kitchen and a bathroom, they were required to stay in their home. Plaintiffs did so for a short time, however, due to the water throughout the home, and Plaintiffs' concerns with mold and the danger to the Plaintiffs' health from living in their home in the condition it was in, they advised Allstate that they would be living elsewhere.  Allstate backed off this demand of the Plaintiffs to live in their home, full of water, and began paying Plaintiffs' alternative living expenses. Allstate thereafter paid movers to move clothing, furniture and personal items to storage, and Defendant began paying for such rentals for storage. At no time has Allstate ever taken the position that Plaintiffs' claim was not covered under the policy.  Allstate has instead sought to limit the Plaintiffs from receiving the full cost of tearing out, renovating, and repairing the damage caused by the covered loss.  After leaving their home, Plaintiffs were required to stay in hotels and later moved to a RV park, where they are still located as of the filing of this lawsuit in a motorhome, as they wait for Defendant to honor the terms of its insurance policy with the Plaintiffs.  In approximately May 2023, Allstate cut off all payment to Plaintiffs for alternative living expenses and storage fees. Plaintiffs' personal items, furniture, china, and clothing, are in storage, begin paid by Plaintiffs out of their own funds.  Plaintiffs are paying their own rental fees for their living, while not able to live in their home.

3.5     On or about January 30, 2023, a Mr. Brent Baker of Allstate offered $52,101.27 to Plaintiffs under their Dwelling Coverage, and delivered a check in that amount to the Plaintiffs, made payable to the Plaintiffs and their mortgage company.  Mr. Baker advised Mr. Dempsey that ***"if this estimate for repairs does not align with what you receive from your contractor of choice for repairs, please let me know".***  Plaintiffs provided this estimate to their "contractor of choice" who advised the Plaintiffs that this estimate was woefully deficient to begin to address the damages to their home and the work that was necessary to place the Plaintiffs home in a livable/pre loss condition.

3.6     After the Plaintiffs notified Allstate of the woeful deficiency of the initial estimate/payment of the $52,101.27, Allstate's adjuster named Lamar Bibby added another approximate $100,000 above the prior offer for Dwelling Protection Coverage and offered it to the Plaintiffs.  Mr. Bibby issued an estimate dated March 6, 2023, for a total amount of $153,693.  Thereafter, in a meeting with Plaintiff Paul Dempsey, Lamar Bibby, and Plaintiffs' contractor of choice at the home, along with numerous representatives of subcontractors, (floor, painting, cabinet, etc.), in discussion about the March 6, 2023, estimate, other areas of the home were determined to be required to be repaired and replaced due to the water loss. Such additional areas were agreed by Mr. Lamar Bibby to be areas that needed to be replaced/repaired that were not included on the March 6, 2023, estimate. Incorporating these additional items and areas agreed to by Allstate's adjuster Lamar Bibby, Plaintiffs' contractor of choice advised Allstate that the estimate, including these additional agreed to items and areas, for what could be seen, before work began and the possibility of unknown/unseen issues behind the walls and elsewhere arose, was $193,198.99. Plaintiffs' contractor of choice delivered to Allstate his itemized estimate for such costs on or about March 17, 2023.

3.7     Allstate refused to offer any additional monies to the Plaintiffs beyond what was offered by their adjuster's estimate of March 6, 2023, in the amount of $153,693.  Plaintiffs were forced to retain an attorney to assist them and retained the undersigned counsel.  Plaintiffs' counsel delivered to Allstate a letter dated April 19, 2023, notifying Allstate of its violations of Texas Ins. Code 541.145(a) and Tex. Ins. Code 542.051(4).  (See such letter attached hereto as Exhibit B). Plaintiffs expressed to Allstate in such communication that they needed Allstate to commit to their contractor's estimate of $193,198.99 without limitation of the possibility of future payments being required to be made by Allstate, if unknown problems were determined by Plaintiffs' contractor of choice to exist once the work began.

3.8     After undersigned counsel contacted Allstate, Allstate advised it needed additional "support" from Plaintiffs' contractor of choice to be able to evaluate the $193,198.99 estimate. Plaintiffs provided it to Allstate on the date of June 12, 2023.

3.9     The response from Allstate to the information provided by the Plaintiffs on June 12, 2023, was that it would pay an additional $160,000 under the Dwelling Coverage (Coverage A), in addition to the $52,101.27 already paid, and another $6000 for food/rent under the ALE coverage. However, Allstate would require the Plaintiffs to sign a release of any further benefits under their Allstate insurance policy under any and all coverages.

3.10    The offer of an additional $160,000 to Plaintiffs under their dwelling coverage when added to the $52,101.27 already paid under the dwelling coverage, equals $212,101.27. This amount exceeds the amount of Plaintiffs' contractor of choices' current estimate of $193,198.99 (under Dwelling Coverage A) by the amount of $18,902.28. However, although Allstate desires to shut down the claim by obtaining a release, and removing any further risk to Allstate it promised to pay to the Plaintiffs for a covered claim when Allstate accepted the Plaintiffs' premium, the Plaintiffs are not willing to accept the risk of being placed in a self – insured situation, and are not willing to sell back their Allstate policy to Allstate in return for an upfront payment of an additional $18,902.28.

3.11    What Allstate has done in this claim, is to attempt to switch the risk away from itself under the Policy it sold to Plaintiffs, to the Plaintiffs themselves. The coverage limits under the Dwelling Coverage, Exhibit A, is $462,348, subject to a deductible of $4,623. The amount offered to Plaintiffs by Defendant under the Dwelling Coverage is less than half of the coverage that Allstate promised them when they sold them the policy.

3.12    It is possible that any additional payment to Plaintiffs under Dwelling Coverage A may ultimately be less than the additional $160,000 offered to them by Allstate under Dwelling Coverage A. But the risk to the Plaintiffs that the ultimate cost of repair under Dwelling Coverage A could be

even higher than an additional $160,000, due to unforeseen issues that may arise once the construction begins, is not something that the Plaintiffs are willing to risk and not a risk that they should be responsible for or even to be asked by Allstate to accept. The Plaintiffs paid Allstate to bear such risk, and Allstate accepted their premium required to be paid by Plaintiffs for such protection for such a risk, up to the amount of the coverage limits under Dwelling Coverage A.

3.13    At no time have the Plaintiffs sought to "settle" their claim with Allstate, in return for a lump sum certain payment to Plaintiffs by Allstate. What the Plaintiffs have requested, and been forced to demand from Allstate, is that Allstate honor the terms of the policy of insurance that Allstate sold to them and see the claim through to its conclusion. Defendant wants to renege and default on its promises and obligations to Plaintiffs and pay a small amount of money to the Plaintiffs to alleviate Defendant of its financial obligations under the contract. Allstate has failed to honor its obligations to Plaintiffs, therefore Plaintiffs are required to file this lawsuit to seek judicial relief.

## IV. Causes of Action

4.1    Plaintiff incorporates the information provided in paragraphs 3.1 – 3.13 by reference. Such facts support the following violations of Texas law, both common law and under the Texas Insurance Code, as please further herein.

**A.    Breach of Contract**:

4.2    Defendant Allstate has a contract of insurance with the Plaintiffs. (See Exhibit A) Allstate breached the terms of the contract by wrongfully denying and/or offering to underpay the claims of Plaintiffs. The breach by Allstate was of material terms of the contract. As a result of Defendant's breach of contract, Plaintiffs have suffered actual damages including but not limited to the benefits due to them under Dwelling Protection – Coverage A, as well as Additional Living Expenses that Plaintiffs have incurred, from the date that Allstate improperly, and as breach of the contract, stopped

paying such benefits, to and through the time that the necessary repair and renovation of their home is completed. Plaintiffs are also entitled to equitable relief from this Court.

4.3     Plaintiffs are also entitled to pre-judgment and post-judgment interest on their damages caused by the Defendant's breach of the contract, as well as taxable court costs. Plaintiffs are also entitled to the recovery of their reasonable and necessary attorney's fees incurred in this action, pursuant to Tex.Civ.Prac. and Rem.Code §38.001.

B.     **Bad Faith**:

4.4     Plaintiffs are insured under an insurance contract issued by Defendant Allstate, which gave rise to Allstate's duty of good faith and fair dealing. Defendant violated such duty of good faith and fair dealing, by failing to honor the terms of the contract, and has denied and delayed the Plaintiffs' claims and knew or should have known that the coverage of the Plaintiffs' claims was reasonably clear. Such bad faith also includes Allstate's requirement that the Plaintiffs release all claims for benefits under the policy before the full extent of the covered loss is known by the Plaintiffs.

4.5     Defendant Allstate knew and knows that the coverage for Plaintiffs' claim is clear, as it has produced no evidence disputing the covered event and the benefits asserted by Plaintiffs that they are entitled to receive under the terms of their policy. Allstate's representative Mr. Lamar Bibby approved the scope of work that was covered in Plaintiffs' contractor of choice's estimate provided for $193,198.99.

4.6     Plaintiffs have suffered damages caused by Defendant's bad faith, including but not limited to the benefits due to them under Dwelling Protection – Coverage A, as well as Additional Living Expenses that Plaintiffs have incurred, from the date that Allstate stopped paying such benefits, to and through the time that the necessary repair and renovation of their home is completed. Plaintiffs have also suffered mental anguish in the past, and they are reasonably expected to experience mental anguish in the future, due to Allstate's actions and inactions.

4.7    Plaintiffs also are entitled to recover punitive damages from Allstate, as Allstate's actions in denying the claim were fraudulent, malicious, intentional and/or grossly negligent.

4.8    Plaintiffs are also entitled to the recovery of pre-judgment and post-judgment interest on all sums recovered, and taxable court costs.

C.    **Deceptive Insurance Practices – Tex. Ins. Code Ch. 541**:

4.9    Plaintiffs assert claims for damages and other relief from Defendant Allstate under Chapter 541 of the Texas Insurance Code.

4.10    Plaintiffs and Defendant are "persons" as defined by Texas Insurance Code § 541.002(2).

4.11    Defendant engaged in an act or practice that violated Texas Insurance Code chapter 541, subchapter B, as follows:

a) The actions and inactions of Allstate set out above were and continue to be in violation of Tex. Ins. Code § 541.060 (a)(2)(A), as Allstate did not attempt in good faith to bring back a prompt, fair and equitable settlement of the Dempseys' claim once the liability of Allstate became reasonably clear.

b) Such actions and inactions of Allstate constituted a violation of Tex. Ins. Code § 541.060(a)(6), by Allstate's attempt to enforce a full and final settlement of Plaintiffs' claim when only a partial payment has been made.

c) Such actions and inactions also constituted the refusal of Allstate to pay a claim without conducting a reasonable investigation, under Tex. Ins. Code § 541.060 (a)(7).

d) Such actions and inactions, in requiring the Plaintiffs to release their claim for future policy benefits, before the full extent of the damage can be determined, are in violation of Tex. Ins. Code § 541.060 (a)(1). Such a request and requirement by Allstate was a misrepresentation of a material fact and of policy provisions relating to the contract at issue.

e) Such actions and inactions also constituted Allstate's failure to promptly provide the Plaintiffs a reasonable explanation of the basis in the policy, in relation to the facts underlying their claim, as well as under applicable law, for Allstate's denial of Plaintiffs' claim, or in its offer of a compromise and settlement of their claim, under Tex. Ins. Code § 541.060 (a)(3).

f) Such actions and inactions, in requesting and requiring the Plaintiffs to release their claim for future policy benefits, before the full extent of the damage can be determined, is in violation of Tex. Ins. Code § 541.061 (1) as making an untrue statement of material fact, Tex. Ins. Code § 541.061 (3) making a statement in a manner that would mislead a reasonably prudent person to false conclusions of material fact, and Ins. Code § 541.061 (4) making a material misstatement of law.

4.12    Plaintiffs provided notice to Allstate for their claims under Chapter 541 of the Texas Insurance Code, more than 60 days before filing the present lawsuit.

4.13    Allstate's violation of Chapter 541 of the Texas Insurance Code is a producing cause of Plaintiffs' damages.

4.14    Plaintiffs are entitled to receive as damages due to Defendant's violation of the Texas Insurance Code provisions above, the amount of policy proceeds necessary to complete the repair and renovation of Plaintiffs' home under Dwelling Protection – Coverage A, as well as Additional Living Expenses that Plaintiffs have incurred, from the date that Allstate stopped paying such benefits, to and through the time that the necessary repair and renovation of their home is completed.

4.15    Because Allstate has acted knowingly in violation of the Texas Insurance Code provisions cited above, Plaintiffs are entitled to receive mental anguish damages that they have incurred because of such violations, in the past as well as such mental anguish damages that they will incur in the future due to Allstate's actions.

4.16     Because Allstate has acted knowingly in violation of the Texas Insurance Code provisions cited above, Plaintiffs are entitled to receive additional damages under Tex.Ins.Code §541.152(b), in an amount up to 3 times the amount of their actual damages.

4.17     Plaintiffs are also entitled to recover pre-judgment interest, taxable court costs, and reasonable and necessary attorney's fees incurred in pursuing their claim.

D.     **Late Payment of Claims – Tex.Ins.Code Ch. 542**:

4.18     Plaintiffs bring this claim under Tex.Ins.Code §542.051(2).  Defendant is an insurer as defined by Tex.Ins.Code §542.052.

4.19     Plaintiffs have timely provided written notice as required by Chapter 542 of their claim for insurance benefits, or alternatively, Defendant has waived any complaint of written notice due to the fact that Defendant has investigated the claim.

4.20     Defendant is liable for Plaintiffs' claim. Although Defendant advised that it would pay the Plaintiffs' claim, for an amount greater than the original payment of $52,101.27, but did not do so prior to the 5th business day after the date such notice was given to Defendants, as required under Tex.Ins.Code §542.057(a)

4.21     Alternatively, if Defendant contends that it rejected the claim of the Plaintiffs, it failed to provide the notice required to be given to Defendants of such rejection, within the time required by law, and also with the details required by Tex.Ins.Code §542.056(c).

4.22     Defendant did not receive any agreement from the Plaintiffs waiving the deadlines placed upon Defendant to pay the claim under Chapter 542 of the Texas Insurance Code.

4.23    Defendant is liable to the Plaintiffs for the failure to timely pay the claim after accepting it, and/or wrongfully rejecting the Plaintiffs' valid claim, and/or by taking no action on the Plaintiffs' valid claim. Tex.Ins.Code §542.057 and §542.058.

4.24    Due to Defendant's violation of the above provisions of Chapter 542 of the Texas Insurance Code, the Plaintiffs are entitled to receive as their economic damages the amount of policy proceeds necessary to complete the repair and renovation of Plaintiffs' home under Dwelling Protection – Coverage A, as well as Additional Living Expenses that Plaintiffs have incurred, from the date that Allstate stopped paying such benefits, to and through the time that the necessary repair and renovation of their home is completed.

4.25    Plaintiffs are entitled to recover statutory damages under Tex.Ins.Code §542.060(a) on the amounts Defendant is required to pay to Plaintiffs, in the amounts remaining to be recovered by the Plaintiffs after crediting the earlier payment by Allstate under the Dwelling Protection – Coverage A, in the amount of $52,101.27

4.26    Due to Defendant's violation of Chapter 542 of the Texas Insurance Code, Plaintiffs are entitled to recover pre-judgment and post-judgment interest on all amounts recovered by them, as well as taxable court costs, and reasonable and necessary attorney's fees incurred in pursuing their claim.

**V.     Conditions Precedent**

5.1     Plaintiffs have satisfied all conditions precedent to the advancement of their claims in this lawsuit.

5.2     Plaintiffs have paid all premiums required of them under the Policy issued by Defendant to them, upon which this lawsuit is based.

## VI.  Demand for Trial by Jury

6.1     Plaintiffs assert their demand for a Jury Trial pursuant to Fed. R. Civ. P. 38(b).

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request that upon service of Summons and Complaint upon Defendant, and after final hearing and/or trial, that this Court award Plaintiffs all relief to which they plead in this action, and that this Court award the Plaintiffs such other and further relief to which they will show themselves justly entitled, whether at law or at equity.

Respectfully submitted,

Mark C. Burgess, TSB 00783755
John Mark Burgess TSB 24105556
**BURGESS LAW FIRM, PLLC**
4201 Texas Boulevard
Texarkana, Texas 75503
Telephone:     903-838-4450
Facsimile:      844-270-5674
Email:  mark@markburgesslaw.com

By: _/s/ Mark C. Burgess_

Mark C. Burgess
Attorneys for Plaintiffs